1

**Thimesch Law Offices**
TIMOTHY S. THIMESCH, ESQ., No. 148213

2
  tim@thimeschlaw.com
158 Hilltop Crescent

3
Walnut Creek, CA 94597-3452
Tel: 925/588-0401

4
Fax: 888/210-8868

5
Attorneys for Plaintiff CRAIG YATES

6
STEPHEN Q. ROWELL, ESQ., No. 098228          ROGER V. JAFFE (SBN 126818)
SAFEWAY, INC.                                THE BRITT GILBERT LAW GROUP

7
5918 Stoneridge Mall Road, Bldg. G           770 L Street, Suite 950
Pleasanton, CA 94588-3229                    Sacramento, CA 95814

8
(925) 467-3936                               Phone: (916) 447-8800
Fax: (925) 467-3214                          Fax: (916) 447-8801

9
Email: stephen.rowell@safeway.com            Email: rjaffe@brittgilbert.com

10
Attorneys for Defendant SAFEWAY, INC.        Attorneys for Defendant DYNACO, INC.

11

12
GLEN WIENKIE                                 TAMRA WIENKE
  gwienke@yahoo.com                            gwienke@yahoo.com
829 11th Street                              829 11th Street

13
Lakeport, CA 95453                           Lakeport, CA 95453
Fax: 707-262-1160                            Fax: 707-262-1160

14

15
PRO SE                                       PRO SE

16
UNITED STATES DISTRICT COURT

17
NORTHERN DISTRICT OF CALIFORNIA

18
CRAIG YATES,                                 CASE NO. CV-11-0873   SI

19
                                             Civil Rights
        Plaintiff,

20
v.

21
                                             [Proposed] **FULL CONSENT DECREE**
PERKO'S CAFÉ; SAFEWAY, INC.;                 **ORDER AND JUDGMENT**

22
GLEN WIENKE; TAMRA WIENKE;
[LEE ROY CAMPBELL]; DYNACO, INC.;

23
and DOES 2 through 50, Inclusive,

24
        Defendants.
_____/

25

26
////

27
////

28
////

Full Consent Decree Order and Judgment: Case No. CV-11-0873 DMR

1

## TABLE OF CONTENTS

2  INTRODUCTION ............................................................................1
   STIPULATIONS
3      Plaintiffs' Qualified Disability ..............................................2
       Plaintiff's Status as Aggrieved and Potentially Aggrieved ..............2
4      Qualified Facilities..............................................................2
5      Alteration History ..............................................................2
       Scope of Facilities in Issue ..................................................2
6  JURISDICTION ............................................................................2
   SCOPE OF SETTLEMENT
7  AGREEMENTS CONCERNING INJUNCTIVE RELIEF .....................3
8      Performance Standards ......................................................17
       Option to Close Facilities ..................................................17
9      Time for Compliance ..........................................................17
       Enforcement......................................................................18
10 AGREEMENT CONCERNING DECLARATORY RELIEF .............18
   RESOLUTION OF REMAINING MONETARY CLAIMS ...................
11     Resolution of Plaintiffs' Claim for Statutory Damages.................18
12     Resolution of Claim for Reasonable Statutory Attorneys Fees, Litigation
          Expenses and Costs.........................................................19
13 CONSENT DECREE BINDING ON PARTIES AND SUCCESSORS IN
       INTEREST ..........................................................................19
14 CONSENT TO JURISDICTION OF MAGISTRATE JUDGE ...........20
   JOINT PREPARATION AND SEVERABILITY .................................20
15 SIGNATORIES BIND PARTIES .......................................................20

16

17

18

19

20

21

22

23

24

25

26

27

28

Thimesch Law Offices
158 HILLTOP CRESCENT
WALNUT CREEK,
CA 94597-3452
(925) 588-0401

## FULL CONSENT DECREE ORDER AND JUDGMENT

**INTRODUCTION**

1.    Plaintiff CRAIG YATES is a person with a disability whose condition requires the full time use of a wheelchair for mobility

2.    Defendants GLEN WIENKI and TAMRA WIENKI (hereafter "Sub-Tenants") are the owners, operators, and sub-lessees of the public accommodation Perko's Cafe, located at or near 829 – 11th Street in Lakeport, California (hereafter, "Subject Restaurant").  They lease the property from Defendant DYNACO, INC., the franchiser, which in turn leases the property from its owner, SAFEWAY, INC.  Together, these Defendants shall be referred to herein collectively as Landlords.  Together, the subject Tenant and Landlords shall be referred to as Defendants; and together Plaintiff and the Defendants shall be referred to collectively herein as the Parties.

3.    Plaintiff filed this action for himself and all other similarly situated members of the public to vindicate their rights under the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. §§ 12101 et seq., and Civil Code Section 54 and 54.1.

4.    Plaintiff alleges that Subject Defendants and the Perko's Cafe violated these statutes by failing to provide full and equal access and related facilities, including an accessible route from the public sidewalk to all elements of the building, and to the main entrance, vestibule, dining facilities, dining counter, dining tables, dining patio, and public restrooms. Specific identification of the facilities and their deficiencies were indentified in the Complaint filed on February 24, 2011.

5.    Plaintiff alleges that the subject building and site has undergone construction triggering the requirement of full compliance with regulations in the altered areas, and that further Defendants could easily afford to makes its facilities and services accessible without significant difficulty or expense.

6.    The Parties enter this Full Consent Decree Order and Judgment (hereafter "Consent Decree") in order to fully resolve the issues, claims and defenses in this case.

////

Thimesch Law Offices
158 HILLTOP CRESCENT
WALNUT CREEK,
CA 94597-3452
(925) 588-0401

**STIPULATIONS**

      **7.**    **Plaintiff's Qualified Disability.** Plaintiff qualifies as a "person with a physical disability" as defined by the relevant statutes.

      **8.**    **Plaintiff's Status as Aggrieved and Potentially Aggrieved.** Plaintiff CRAIG YATES alleges he has standing to bring this action, that he regularly visits the area to care for a relative, and his activities in the area include dining and shopping. While the Defendants do not admit all of the foregoing allegations, they agree that sufficient facts support Plaintiff's qualification as "aggrieved and potentially aggrieved" under the relevant statutes, and his individual standing under Article III of the U.S. Constitution.

      **9.**    **Qualified Facilities.** The Perko's Cafe qualifies as a "public accommodation" and "commercial facility" under all applicable statutes and regulations.

      **10.**    **Alteration History.** The parties stipulate that all facilities in issue have undergone sufficient and recent alteration and/or new construction to require compliance with the Americans With Disabilities Act Access Guidelines published in 1992, as it applies to altered facilities, and that the restaurant is otherwise subject to the requirements of Civil Code Section 54.3 and Title 24, Part II, of the California Code of Regulations.

      **11.**    **Scope of Facilities in Issue.** The following are the facilities at the Subject Restaurant affected by this Consent Decree: including, but not limited to: the accessible route from the public sidewalk and boundary of the site to the main entrance of the restaurant, the main entrance, the dining table facilities, the bar counter, and the public restrooms.

**JURISDICTION**

      **12.**    The facts requisite to federal jurisdiction are admitted. This Court has jurisdiction pursuant to 28 U.S.C. §1331 for the alleged violations of the ADA, 42 U.S.C. §§ 12101, et seq. Article III jurisdiction is proper due to the Plaintiff's continued exposure and use of the restaurant for dining. Pendant jurisdiction of the state law claims arises from a common nucleus of fact and is proper.

      **13.**    This Court shall have continuing jurisdiction to interpret and enforce this

Thimesch Law Offices
158 HILLTOP CRESCENT
WALNUT CREEK,
CA 94597-3452
(925) 588-0401

Full Consent Decree Order and Judgment: Case No. CV-11-0873 DMR      — 2 —

Consent Decree until Defendants have fulfilled all conditions hereunder.   This agreement is contingent upon Court acceptance of this continuing jurisdiction.

14.   The parties agree to entry of this Consent Decree in order to resolve the below listed allegations raised in the Complaint filed with this Court on October 26, 2010. Accordingly, the parties agree to this Consent Decree without trial or further adjudication of any issues of fact or law concerning the issues specified herein Full Consent Decree Judgment and Order.

15.   In entering this Consent Decree, Defendants agree this Consent Decree fully vindicates Defendants' violation of Plaintiffs' rights under the Americans with Disabilities Act and Civil Code Section 54 and 54.1.

WHEREFORE, the parties hereby agree and stipulate to the Court's entry of this Full Consent Decree Judgment and Order, which provides as follows:

## SCOPE OF SETTLEMENT

16.   This Consent Decree shall be a full, complete, and final disposition and settlement of the below claims that have been or could have been alleged in the Complaint, including for injunctive relief, declaratory relief, statutory and compensatory damages, including personal and bodily injury, and Plaintiff's claims for reasonable statutory attorney fees, litigation expenses and costs.   This Consent Decree was reached through negotiations between the Parties.   The Court shall retain jurisdiction of this action to enforce and interpret this Full Consent Decree Judgment and Order.   The parties agree that if they or any of them seek Court enforcement of this Full Consent Decree Judgment and Order, any such enforcement will be by noticed motion, application or other appropriate request for an order for specific performance, and that a contempt citation or decree will not be sought by any party.

## AGREEMENTS CONCERNING INJUNCTIVE RELIEF

17.   **Specific Agreed Remediations.**   As a part of a compromise of global liability, the Defendants each agree:

Thimesch Law Offices
158 HILLTOP CRESCENT
WALNUT CREEK,
CA 94597-3452
(925) 588-0401

Full Consent Decree Order and Judgment: Case No. CV-11-0873 DMR                    — 3 —

**(1)** At the time of filing the original Complaint and the and the formal inspection on August 28, 2011 (hereafter "formal inspection"), there was no signage at the entrance to the lot denoting that persons illegally parked in accessible spaces will be towed, which is a feature required by code. (See the 2007 California Building Code (2007-CBC) §1129B.4.) This barrier discriminates against the specific disabilities of wheelchair users like Plaintiff by failing to protect the availability of the parking spaces that he needs to be able to park in the lot and exit the vehicle. Defendants either have already, or will, provide signage in compliance with CBC requirements.

**(2)** At the time of filing the original Complaint and the formal inspection, the ramp at the boundary of the site and serving the path of travel to the main entrance had a lip at the gutter of 5/8 inch, which exceeds the ¼ inch maximum, or ½ inch beveled maximum specified by code. (See the 2007 California Building Code (2007-CBC) §1124B.2; and ADAAG §4.3.8.) This barrier discriminates against the specific disabilities of wheelchair users like Plaintiff by making use of the curb ramp less readily accessible than specified by code, and thereby potentially limiting their mechanical and physical endurance. Defendants either have already, or will, provide a confirming lip at the ramp in compliance with CBC and ADAAG requirements.

**(3)** At the time of filing the original Complaint and the formal inspection, there was no directional signage at the boundary of the site indicating the location of the accessible route to the main entrance of the restaurant, which is in violation of code. (See the 2007 California Building Code (2007-CBC) §1117B.5.1.3; and ADAAG §4.1.2 (7).) This barrier discriminates against the specific disabilities of wheelchair users like Plaintiff by making it more difficult for them to locate the accessible route, requiring searching and potential back tacking, and thereby potentially limiting their mechanical and physical endurance. Defendants either have already, or will, provide a confirming signage indicating the location of the accessible route in compliance with CBC and ADAAG requirements.

**(4)** At the time of filing the original Complaint and at the formal inspection, the path of travel between boundary of the site and the primary entrance to the Café had cross-

Thimesch Law Offices
158 HILLTOP CRESCENT
WALNUT CREEK,
CA 94597-3452
(925) 588-0401

slopes within it, which exceeded the maximum 2% permitted by code. (2007-CBC §§ 1114B.1.2 & 1128B; and the 1994 Americans with Disabilities Act Accessibility Guidelines (ADAAG) §§ 4.3.2 & 4.3.7.) This barrier discriminates against the specific disabilities of wheelchair users like Plaintiff by increasing the difficulty and hazard that the Plaintiff must endure to traverse this distance, which additionally diminishes his physical and mechanical endurance. Defendants either have already, or will, reconfigure the path of travel so that no cross-slope exceeds 2% along this route.

(5)     At the time of filing the original Complaint and the formal site inspection, the designated accessible parking spaces and their adjacent unloading zone each had slopes within them of 2.2% to 3.6%, this exceeds the 2% maximum slope permitted within a parking place. (2007-CBC § 1129B.3#4; ADAAG §4.6.3.) These barriers discriminate against the specific disabilities of wheelchair users like Plaintiff by increasing the hazard and difficulty of his performing a safe entrance and exit to his vehicle. Defendants either have already, or will, reconfigure this parking spaces and their unloading zone so that no slope exceeds 2% in any direction across the full width and length of the parking surface.

(6)     At the time of filing the original Complaint and the formal site inspection, the designated parking spaces were not trimmed in blue as required by code. (2007-CBC §1129B.3 #1.) This barrier discriminates against the specific disabilities of wheelchair users like Plaintiff by making it impossible for law enforcement to enforce the prohibition against parking in this space by people who are not eligible to use this amenity, because it fails to comply with the California Vehicle Code. Defendants either have already, or will, restripe this parking in the proper color in conformance with the CBC.

(7)     At the time of filing the original Complaint, there was no posted sign indicating that parking in an accessible space carries a fine of $250 has been provided at the end of the spaces, which are required the code. (2007-CBC §1129B.4.) This barrier discriminates against the specific disabilities of wheelchair users like Plaintiff as specified in paragraph (6), supra Defendants either have already, or will, post this proper signage in conformance with CBC requirements.

Thimesch Law Offices
158 HILLTOP CRESCENT
WALNUT CREEK,
CA 94597-3452
(925) 588-0401

Full Consent Decree Order and Judgment: Case No. CV-11-0873 DMR                    — 5 —

**(8)**     At the time of filing the original Complaint and the formal inspection, no van accessible parking has been provided as required by the code.  (2007-CBC §1129B.3 #2; ADAAG §4.1.2(5)(b).)  This barrier discriminates against the specific disabilities of wheelchair users like Plaintiff because the space needed for his lift equipped van was decreased below the minimum necessary for his mechanical apparatus to deploy and allow him to enter and exit the vehicle safely and reliably off the end of the apparatus.  It also greatly increased the risk of his being blocked from entering or exiting his vehicle by an adjacently parked vehicle, i.e., even when such vehicle parks properly within the confines of its space. On Plaintiff's visits, he has encountered this barrier, and will likely encounter it again, as this space is the only van accessible space on an accessible route to the main entrance.  Defendants either have already, or will, provide proper van accessible parking adjacent to the Café in conformance with ADAAG/CBC requirements.

**(9)**     At the time of filing the original Complaint and the formal inspection, the height of the highest operable part for the public pay phone is 52 inches, which exceeds the 48 inch maximum specified by code for this front approach-only amenity. (See the 2007 California Building Code (2007-CBC) §1117B.2.6; and ADAAG §4.31.3.)   This barrier discriminates against the specific disabilities of wheelchair users like Plaintiff by making it more difficult to impossible for them to reach and use the telephone from their seated position. Defendants either have already, or will, lower the phone so that the highest operable part is within the reach range specified by the CBC and ADAAG requirements.

**(10)**     At the time of filing the original Complaint and the formal inspection, the mat at the front entry was not firmly attached, and buckles under the movement of a wheelchair user's wheels, which is in violation of code. (See the 2007 California Building Code (2007-CBC) §1124B.3; and ADAAG §4.5.3.)  This is also true of the vestibule mat.  These barriers discriminate against the specific disabilities of wheelchair users like Plaintiff by making it more difficult for them to use the main entrance, and thereby making the facility less readily accessible than required by code, and potentially limiting their mechanical and physical endurance.  Defendants either have already, or will, firmly affix the mats in compliance with

Thimesch Law Offices
158 HILLTOP CRESCENT
WALNUT CREEK,
CA 94597-3452
(925) 588-0401

Full Consent Decree Order and Judgment: Case No. CV-11-0873 DMR                    — 6 —

1   CBC and ADAAG requirements.

2         **(11)**   At the time of filing the original Complaint and the formal inspection,

3   the push pressure required to open the doors serving the entrances, both at and within the Café,

4   ranged between 8 to 11 lbs., exceeding the 5 lbs. maximum permitted by code.  (2007-CBC

5   §1133B.2.5; ADAAG §4.13.11.)  This barrier discriminates against the specific disabilities of

6   wheelchair users like Plaintiff by making it more difficult to impossible for the Plaintiff to go

7   through the door without assistance.  Defendants either have already, or will, adjust the amount

8   of push pressure to no more than 5 lbs.

9         **(12)**   At the time of filing the original Complaint, the door hardware serving

10   the main entrance required grasping and pinching to operate, which are actions prohibited by

11   code.   (2007-CBC  §1133B.2.5.2;  ADAAG  §4.13.9.)   This  barrier  discriminates  against

12   Plaintiff's specific grasping disabilities by making it difficult to impossible for him perform an

13   action that he generally is physically unable to perform.  Plaintiff has encountered this barrier

14   on each of the dates of his visits.  Defendants either have already, or will, provide compliant

15   door hardware at the main entrance in conformance with CBC/ADAAG requirements.

16         **(13)**   At the time of filing the original Complaint and of the formal site

17   inspection, the strike edge clearance on the entry door was 10 ¾ inches on the push side (this

18   door has a closer and a latch), which is less than the 12 inch minimum specified by code.

19   (2007-CBC §1133B.2.4.3; ADAAG §4.13.6.)  This barrier discriminates against wheelchair

20   users by providing less than the ready access specified by code.  It requires wheelchair users to

21   make several efforts in order to position themselves in the proper position along the entry's

22   strike side, activate the door, and, while holding it open, move their chair into position to pass

23   through it.  Plaintiff's specific disabilities make it extremely difficult for him perform.  Plaintiff

24   has encountered this barrier on each of the dates of his visits.  Defendants either have already,

25   or will, reconfigure the entry to provide a compliant strike side clearance on the push side in

26   conformance with CBC/ADAAG requirements.

27         **(14)**   At the time of filing the original Complaint and the formal site

28   inspection, the strike edge clearance provided on the pull side of the interior vestibule door

Thimesch Law Offices
158 HILLTOP CRESCENT
WALNUT CREEK,
CA 94597-3452
(925) 588-0401

Full Consent Decree Order and Judgment: Case No. CV-11-0873 DMR      —7—

serving the primary entrance had a length of 9 1/2", far below the 18 inch minimum required by code. (2007-CBC §1133B.2.4.3; ADAAG at §4.13.6 & Figure 25.)  This barrier discriminates against the specific disabilities of wheelchair users like Plaintiff by making it impossible to position the wheelchair a location where the door can swing upon without striking the chair, and makes it much more difficult, if not impossible, to go through the door independently. Plaintiff has encountered this barrier.  Defendants either have already, or will, reconfigure the vestibule, or the swing of the door, to provide no less than 18 inches of strike side clearance on the side to which the door swings.

(15)    At the time of filing the original Complaint and the formal inspection, the usable portion of the lower counter at the cash register had a length of approximately 26 inches instead of the 36 inch minimum required by the code.  This barrier discriminates against the specific disabilities of wheelchair users like Plaintiff by not providing the usable counter needed for the Plaintiff to conduct transaction required on this counter.  Defendants either have already, or will, provide a lower section of the counter at the cash register that is in compliance with CBC/ADAAG requirements.

(16)    At the time of filing the original Complaint and the site inspection, the existing dining counter was set at 36 ¾ inches above the finished floor, and did not have any lower section, which was in violation of the code that requires at least a 36 inch long lower section of the counter. (2007-CBC §1104B.5(4); ADAAG §5.2.)  This barrier discriminates against the specific disabilities of wheelchair users like Plaintiff by making it impossible to sit at the dining counter with or without a companion, as it mandated that he and other wheelchair users sit alone at a table.  Plaintiff has encountered this barrier.  Defendants either have already, or will, provide a lower section at the dining counter that is in compliance with CBC/ADAAG requirements.

(17)    At the time of filing the original Complaint and the site inspection, the existing dining counter had knee space that projects back underneath only 11 ¼ inches, which is instead of the 19 inches required by code. (2007-CBC §1122B.3; ADAAG §4.32.2.)  This barrier discriminates against the specific disabilities of wheelchair users like Plaintiff by

Thimesch Law Offices
158 HILLTOP CRESCENT
WALNUT CREEK,
CA 94597-3452
(925) 588-0401

Full Consent Decree Order and Judgment: Case No. CV-11-0873 DMR                — 8 —

1  making it impossible to sit under the dining counter sufficiently to position one's-self close

2  enough to the food, and avoid spilling into one's lap. Plaintiff has encountered this barrier.

3  Defendants either have already, or will, provide a lower section at the dining counter that is in

4  compliance with CBC/ADAAG requirements.

5      **(18)**    At the time of filing the original Complaint, the seat count in the main

6  dining room was 123, with no accessible tables provided. For instance, the stand-alone tables

7  in the Café dining areas had knee space under them that project approximately 13 ¾ inches

8  under the table, instead of the 19 inch minimum required by the code, and were insufficient in

9  number and equivalent location. The booths, themselves, have only 21 inches of knee space

10  between the seats instead of the 30 inch minimum required by code. And on the patio, the

11  fixed seats on the picnic tables provide no accessible means to approach the dining surface.

12  (2007-CBC §1122B.3; ADAAG §4.32.3.) Under the code, 5% of the seating in each discrete

13  seating area needs to be accessible and provide accessible companion seating. (2007-CBC

14  §1122B.1; ADAAG §5.1.) These barriers discriminate against the specific disabilities of

15  wheelchair users like Plaintiff by failing to provide a table that has equivalent usability to those

16  provided to able-bodied patrons who can position themselves under the table in an appropriate

17  manner. Plaintiff has encountered these barriers/restricted dining choices. Defendants either

18  have already, or will, provide access to at least 5% of the tables in each seating section of the

19  dining room and patio area in conformance with CBC/ADAAG requirements, ensuring that

20  none of such designated accessible tables has a pedestal, pedestal base or other obstruction

21  located within the 19 inch minimum dept required for knee space dimension.

22      **(19)**    At the time of filing the original Complaint and the site inspection, the

23  gate serving the exterior patio dining area lacked a smooth and uninterrupted surface within the

24  bottom 10 inches of the push side as required by code. (2007-CBC §1133B.2.6.) This barrier

25  discriminates against the specific disabilities of wheelchair users like Plaintiff by making it

26  difficult to impossible, if not hazardous, to use the footrests of one's chair to push open the

27  gate. Plaintiff is deterred by this barrier. Defendants either have already, or will, provide this

28  gate with a kick plate is in compliance with CBC requirements.

Thimesch Law Offices
158 HILLTOP CRESCENT
WALNUT CREEK,
CA 94597-3452
(925) 588-0401

1    **(20)**    At the time of filing the original Complaint and the site inspection, the

2    patio gate serving the exterior patio dining area had a strike side clearance of 3 ¾ inches on the

3    push side of 3 ¾ inches, which is instead of the 12 inch minimum required by code. (2007-CBC

4    §1133B.2.4.3; and ADAAG §4.13.6 )  This barrier discriminates against wheelchair users by

5    providing less than the ready access specified by code.  It requires wheelchair users to make

6    several efforts in order to position themselves in the proper position along the entry's strike

7    side, activate the gate, and, while holding it open, move their chair into position to pass through

8    it.  Plaintiff's specific disabilities make it extremely difficult for him perform.  Plaintiff is

9    deterred by this barrier.  Defendants either have already, or will, provide this gate with a kick

10   plate is in compliance with CBC requirements.

11   **(21)**    The patio gate leads to a flight of two stairs down to the exterior

12   sidewalk and path of travel to the street, and provide entry as well as emergency egress from an

13   area of assembly.  (2007-CBC §§ 1111B.3 and 1124A, 1104B.4.3 and 1132B.2; ADAAG 4.1.3,

14   and 4.3.2 (3).)  The absence of a vertical means of access serves to entirely exclude disabled

15   persons from this normal path of travel.  Plaintiff is deterred by this barrier.  Defendants either

16   have already, or will, provide a vertical means of access as compliance with CBC and ADAAG

17   requirements.

18   **(22)**    At the time of filing the original Complaint and the site inspection, the

19   patio door serving the exterior patio dining area had a threshold of 5/8 inches in height, which

20   exceeds the ¼ inch maximum, or ½ inch maximum beveled specified by code. (2007-CBC

21   §1124B.2; and ADAAG §4.3.8 )  This barrier discriminates against the specific disabilities of

22   wheelchair users like Plaintiff by making use of the entry less readily accessible than specified

23   by code, and thereby potentially limiting their mechanical and physical endurance.  Defendants

24   either have already, or will, provide a confirming threshold in compliance with CBC and

25   ADAAG requirements..

26   **(23)**    At the time of filing the original Complaint and the site inspection, the

27   door landing on the exterior pull side is obstructed by a bench and table, which obstructs the 60

28   inch minimum door landing specified by code. (2007-CBC §1133B.2.4.3; and ADAAG

Thimesch Law Offices
158 HILLTOP CRESCENT
WALNUT CREEK,
CA 94597-3452
(925) 588-0401

Full Consent Decree Order and Judgment: Case No. CV-11-0873 DMR        — 10 —

§4.13.6) This barrier discriminates against the specific disabilities of wheelchair users like Plaintiff by making it difficult to impossible to position their chair within the landing, and outside the door's swing, and then operate the door and go through it. Plaintiff is deterred by this barrier. Defendants either have already, or will, provide a confirming threshold in compliance with CBC and ADAAG requirements.

(24)    At the time of filing the original Complaint and the formal inspection, the width of the hallway leading to the public restroom was often restricted by the placement of highchairs stored and misplaced along this accessible route at its turn, such that the clear width is below the minimum required by code. (2007-CBC §1101B.3; 28 C.F.R., §36.211.) The maintenance of this condition discriminated against the specific disabilities of wheelchair users like Plaintiff by restricting his wheelchair's passage to the restroom corridor. Plaintiff has encountered this barrier. Defendants either have already, or will, develop a written policy, backed by employee training, to maintain the hallway clear of all obstructions.

(25)    At the time of filing the original Complaint and the formal inspection, the public restrooms did not have ADA or Title 24 signage of any kind. (2007-CBC §1115B.6; ADAAG §4.30.6.) This barrier discriminates against the specific disabilities of wheelchair users like Plaintiff by failing to notify the individual that an accessible restroom facility is available to them. Defendants either have already, or will, provide proper signage in conformance with CBC/ADAAG requirements.

(26)    At the time of filing the original Complaint and at the formal inspection, the amount of push pressure required to open the men's room door was approximately 14 pounds, which exceeds the 5 lbs. maximum permitted by the code. (2007-CBC 1133B.2.5.2; ADAAG §4.13.9.) This barrier discriminates against the specific disabilities of wheelchair users like Plaintiff by making it more difficult to impossible for the Plaintiff to go through the door without assistance. Plaintiff has encountered this barrier. Defendants either have already, or will, adjust the closer so that he amount of push pressure does not exceed 5 lbs.

(27)    At the time of filing the original Complaint and the formal inspection,

Thimesch Law Offices
158 HILLTOP CRESCENT
WALNUT CREEK,
CA 94597-3452
(925) 588-0401

Full Consent Decree Order and Judgment: Case No. CV-11-0873 DMR          — 11 —

1   neither urinal in the men's room had been lowered, which is in contravention of the code

2   requiring that at least one fixture be lowered to within 17 inches above the finished floor (the

3   height of the lip for both urinals at the time of the inspection was 24 ¼" and 23 ¾" above the

4   finished floor).  (2007-CBC §1115B.4.2(1); ADAAG §4.18.2.)  This barrier discriminates

5   against the specific disabilities of wheelchair users like Plaintiff by making it difficult to

6   impossible to use the urinal.  Defendants either have already, or will, provide at least one

7   lowered urinal in compliance with CBC/ADAAG requirements.

8       **(28)**   At the time of filing the original Complaint and the formal inspection,

9   the existing urinals projected approximately 12 inches off of the wall instead of the 14 inch

10  minimum required by code.  (2007-CBC §1115B.4.2(1); ADAAG §4.18.2.)  This barrier

11  discriminates against the specific disabilities of wheelchair users like Plaintiff by making it

12  difficult to impossible to use the urinal.  Plaintiff has encountered this barrier.  Defendants

13  either have already, or will, provide at least one elongated urinal in compliance with

14  CBC/ADAAG requirements.

15      **(29)**   At the time of filing the original Complaint and the formal inspection,

16  the knee space underneath the sink counter was 26 5/8 inches, instead of the 29 inch minimum

17  required by the code.  (2007-CBC §1115B.4.3(2); ADAAG §4.19.2.)  This barrier

18  discriminates against the specific disabilities of wheelchair users like Plaintiff by making it

19  difficult to get under the sink without jamming knees into the edge under the counter as he

20  attempted to position himself in a location to use the fixture.  This is a hazardous condition to

21  individuals such as Plaintiff who have little to no feeling in their lower extremities.  Plaintiff

22  has encountered this barrier.  Defendants either have already, or will, reconfigure the seat

23  counter to provide a minimum knee clearance of 29 inches.

24      **(30)**   At the time of filing the original Complaint, the existing functional soap

25  dispenser was set on the wall at the end of the sink counter at a height of approximately 50

26  inches above the finished floor, which exceeded the 40 inch maximum height permitted by the

27  code.  (2007-CBC §1115B.8.3; c.f. ADAAG §§ 4.27.3 & 4.2.5 & 6.)  This barrier discriminates

28  against the specific disabilities of wheelchair users like Plaintiff by locating the dispenser in a

Thimesch Law Offices
158 HILLTOP CRESCENT
WALNUT CREEK,
CA 94597-3452
(925) 588-0401

1    position that is outside of Plaintiff's reach range needed to use the fixture. Plaintiff has

2    encountered this barrier. Defendants either have already, or will, lower the functional soap

3    dispenser so that its operational eye sensor is set no higher than 40 inches AFF.

4        **(31)** At the time of filing the original Complaint and the formal inspection,

5    the drain pipe and hot water pipe underneath the sink had not been wrapped with insulation,

6    which is required by the code. (2007-CBC §1115B.4.3(4); ADAAG §4.19.4.) This barrier

7    discriminates against the specific disabilities of wheelchair users like Plaintiff by increasing the

8    likelihood that he or other individuals using a wheelchair or other mobility assistive device will

9    injure themselves on hot, or sharp and abrasive surfaces. Plaintiff has encountered this barrier.

10    Defendants either have already, or will, provide the required insulation.

11        **(32)** At the time of filing the original Complaint, the hardware serving the

12    sink required grasping, pinching and twisting of the wrist to operate, which is an action

13    prohibited by the code. (2007-CBC §1115B.4.3(1); ADAAG §4.19.5.) This barrier

14    discriminates against the specific disabilities of wheelchair users like Plaintiff by forcing him

15    and other individuals to perform an action that they can only perform with great difficulty.

16    Plaintiff has encountered this barrier. Defendants either have already, or will, provide

17    compliant lever hardware in compliance with CBC/ADAAG requirements.

18        **(33)** At the time of filing the original Complaint and the formal inspection,

19    the clear floor space in front of the entry door was 46 ¾", which is instead of the 60 inch

20    minimum required by the code. (2007-CBC §§ 1127A.1 and 1127A.2; ADAAG §§ 4.13 and

21    4.22.2.) This barrier discriminates against the specific disabilities of wheelchair users like

22    Plaintiff by making it difficult or impossible to position the wheelchair or other mobility

23    assistive device in a location that facilitates opening or going through the door. Plaintiff has

24    encountered this barrier. Defendants either have already, or will, reconfigure the restroom to

25    provide a minimum 60 inch landing in front of the stall.

26        **(34)** At the time of filing the original Complaint, the stall door overlapped the

27    clear floor space required in front of the sink, which is prohibited by the code. (2007-CBC

28    §1115B.3.2 #2; ADAAG §4.22.2.) This barrier discriminates against the specific disabilities of

Thimesch Law Offices
158 HILLTOP CRESCENT
WALNUT CREEK,
CA 94597-3452
(925) 588-0401

Full Consent Decree Order and Judgment: Case No. CV-11-0873 DMR    — 13 —

1   wheelchair users like Plaintiff by increasing the probability that Plaintiff or other wheelchair

2   users will be struck by the stall door while using the sink.  Plaintiff has encountered this barrier.

3   Defendants either have already, or will, reconfigure the stall so that the swing of its door does

4   not overlap the clear floor space in front of the sink.

5          **(35)**   At the time of filing the original Complaint, the hardware on the stall

6   door required grasping, pinching and twisting of the wrist to operate, which is an action

7   prohibited by the code.  (2007-CBC §§ 1133B.2.5.2 & 1115B.3.1(4)(4.5); ADAAG §4.13.9.)

8   This barrier discriminates against the specific disabilities of wheelchair users like Plaintiff by

9   forcing him and other individuals to perform an action that they can only perform with great

10  difficulty.  Plaintiff has encountered this barrier.  Defendants either have already, or will,

11  provide compliant door hardware in conformance with CBC and ADAAG requirements.

12         **(36)**   At the time of filing the original Complaint and the formal inspection,

13  the toilet was set on-center approximately 22 ½ inches from the fixed wall on one side, and

14  approximately 20 inches from the stall wall on the other, instead of the 18 inch on-center

15  dimension required by the code.  (2007-CBC §1115B.4.1(1); ADAAG Figure 28.)  This barrier

16  discriminates against the specific disabilities of wheelchair users like Plaintiff by diminishing

17  the usability of the grab bar and the leverage point, and thereby increasing the hazard that

18  Plaintiff has in making a transfer.  Plaintiff has encountered this barrier.  Defendants either

19  have already, or will, reposition the toilet so that it is 18 inches on center exactly from the wall

20  on the narrow side.

21         **(37)**   At the time of filing the original Complaint and the formal inspection,

22  the clear floor space in front of the toilet was 46 5/8 inches, instead of the 48 inch minimum

23  required by the code.  (2007-CBC §1115B.4.1(2); ADAAG §4.17.3 & Fig. 30.)  This barrier

24  discriminates against the specific disabilities of wheelchair users like Plaintiff by making it

25  impossible for Plaintiff to position the wheelchair appropriately to do a front transfer.  Plaintiff

26  has encountered this barrier.  Defendants either have already, or will, reconfigure the stall to

27  provide the 48 inch minimum front transfer space required by code.

28         **(38)**   At the time of filing the original Complaint and the formal inspection,

Thimesch Law Offices
158 HILLTOP CRESCENT
WALNUT CREEK,
CA 94597-3452
(925) 588-0401

Full Consent Decree Order and Judgment: Case No. CV-11-0873 DMR                — 14 —

1    the distance between the side face of the toilet and the wall on the wide side was approximately

2    18 inches, instead of the 32 inch minimum permitted by the code. (2007-CBC §1115B.4.1(1);

3    ADAAG §4.16.2.) This barrier discriminates against the specific disabilities of wheelchair

4    users like Plaintiff by making it impossible for Plaintiff to position the wheelchair appropriately

5    to do a side transfer. Plaintiff has encountered this barrier. Defendants either have already, or

6    will, reconfigure the stall to provide the 32 inch minimum side transfer space required by code.

7           (39)   At the time of filing the original Complaint and the formal inspection,

8    there was no grab bar provided on the wall behind the toilet, which is required by the code.

9    (2007-CBC §§ 1115B.4.1(1) and 1115.7; ADAAG §§ 4.16.4, 4.26 & Fig. 29.) This absence of

10   this required bar discriminated against the specific disabilities of wheelchair users like Plaintiff

11   by increasing the hazard for Plaintiff when making a transfer. Plaintiff has encountered this

12   barrier. Defendants either have already, or will, provide a rear grab bar in compliance with

13   CBC/ADAAG requirements.

14          (40)   At the time of filing the original Complaint and the formal inspection,

15   the leading edge of both grab bars mounted on each side of the toilet projected approximately

16   51 ¼ inches from the rear wall of the stall, which is less than the 54 inch minimum required by

17   the code. (ADAAG §4.17.6 and Figure 30.) Also at such time, both of the grab bars projected

18   approximately 20 inches in front of the toilet, which is less than the 24 inch minimum

19   projection required by the code. (2007-CBC §1115B.4.1(3)(3.1).) These barriers discriminate

20   against the specific disabilities of wheelchair users like Plaintiff by reducing the usability and

21   effectiveness of the grab bar in getting onto and off the fixture. Plaintiff has encountered this

22   barrier. Defendants either have already, or will, provide a proper grab bar mounted in

23   conformance with CBC/ADAAG requirements.

24          (41)   At the time of filing the original Complaint and the formal inspection,

25   both of these side grab bars had support elements in the middle of the grab bar, which

26   obstructed the usability of the grab bar and is prohibited by the code. (2007-CBC §§

27   1115B.4.1(1) and 1115.7.1; ADAAG §§ 4.16.4, 4.26.2 & Fig. 29.) This barrier discriminates

28   as specified in the prior paragraph. Plaintiff has encountered this barrier. Defendants either

Thimesch Law Offices
158 HILLTOP CRESCENT
WALNUT CREEK,
CA 94597-3452
(925) 588-0401

Full Consent Decree Order and Judgment: Case No. CV-11-0873 DMR                    — 15 —

1   have already, or will, provide a proper grab bar in conformance with CBC/ADAAG

2   requirements.

3       **(42)**   At the time of filing the original Complaint and the formal inspection,

4   the toilet paper holder was mounted on the side wall at a distance of approximately 15 inches in

5   front of the toilet to the leading edge of the toilet paper holder, which exceeded the 12 inch

6   maximum permitted by Title 24, approximately 40 inches beyond the wall behind the toilet,

7   which exceeds the 36 inch maximum permitted by the ADAAG.  (2007-CBC §1115B.8.4;

8   ADAAG Figure 30.)  This barrier discriminates against the specific disabilities of wheelchair

9   users like Plaintiff by forcing Plaintiff to exceed the safe reaching distance, and increases the

10   likelihood that attempting to use this fixture will cause Plaintiff to fall.  This is a hazardous

11   condition.  Plaintiff has encountered this barrier.  Defendants either have already, or will,

12   reposition the toilet paper holder in conformance with CBC/ADAAG requirements.

13       **(43)**   At the time of filing the original Complaint and the formal inspection,

14   the toilet paper holder was mounted above the grab bar, and it obstructed the usability of the

15   grab bar; the code requires that the fixture be mounted below the grab bar at a minimum height

16   of 19 inches above the finished floor.  (2007-CBC §§ 1115B.4.1(1) and 1115.7.1; ADAAG

17   §§ 4.16.4, 4.26.2 & Fig. 29.)  This barrier discriminates against the specific disabilities of

18   wheelchair users like Plaintiff by decreasing the usable length of the grab bar, and thereby

19   increasing the hazard for Plaintiff when making a transfer.  Plaintiff has encountered this

20   barrier.  Defendants either have already, or will, reposition the toilet paper holder below the

21   grab bar in conformance with CBC/ADAAG requirements.

22       **(44)**   At the time of filing the original Complaint and the formal inspection,

23   the sanitary seat cover dispenser was mounted on the side wall of the stall directly adjacent to

24   the toilet, which was not adjacent to the 30 X 48 inch clear floor space specified by the code.

25   (2007-CBC §§1127A.1(2); ADAAG §4.23.3.)  This barrier discriminates against the specific

26   disabilities of wheelchair users like Plaintiff by reducing the usability of the fixture because the

27   dispenser is out of reach.  Plaintiff has encountered this barrier.  Defendants either have

28   already, or will, reposition the sanitary seat cover dispenser next to an accessible clear floor

Thimesch Law Offices
158 HILLTOP CRESCENT
WALNUT CREEK,
CA 94597-3452
(925) 588-0401

Full Consent Decree Order and Judgment: Case No. CV-11-0873 DMR       — 16 —

space in conformance with CBC/ADAAG requirements, and set no higher than 40 inches AFF to the centerline of the dispensing area.

**18.     Joint and Several Responsibility & CASp Supervision.** Defendants shall be jointly and severally responsible to perform all work specified under Paragraph 17 to provide disabled access at the Subject Restaurant.  They shall higher a CASp certified professional to survey the restaurant and supervise completion of all work specified in Paragraph 17.

**19.     Performance Standards.** All of the foregoing facilities specified under Paragraph 17 shall be brought into full and strict compliance with the literal performance standards for altered facilities under the Americans with Disabilities Act Accessibility Guidelines, effective January 26, 1992, and under California's Title 24, (2008), whichever, for any particular element, provides the strongest level of protection to persons with disabilities. Defendant hereby release all alleged claims defenses to literal compliance such as unreasonable hardship, undue hardship, legal and physical constraint, technical infeasibility, 20% cost-cap, etc.

**20.     Option to Close Facilities.** In lieu of making modification to any particular facility or amenity called for by this decree, the Defendant may choose to permanently close/remove such facility, element or amenity from public use.  Such facility, element or amenity shall not be reopened or re-provided for public use without provision of full disabled access pursuant to the terms of paragraphs 17 thru 19.

**21.     Time for Compliance.** As to all other work, Defendant shall submit plans and apply for any necessary permits for this work within 120 days of the entry of this Order on the docket of the court, and complete all such work within 210 days of receiving permits, allowing for good faith interruptions due to inclement weather, contractor unavailability, and other causes under the Doctrine of Force Majeure.  Permits from the building department shall be secured for all work.  Defendant will provide written notice regarding the status of completion within 365 days after entry of this Order.  Defendant shall then provide Plaintiffs, her attorneys and consultants with physical access to inspect, measure and photograph the facilities to verify that the completed work complies with the terms herein.

Thimesch Law Offices
158 HILLTOP CRESCENT
WALNUT CREEK,
CA 94597-3452
(925) 588-0401

22.   **Enforcement.** Should Plaintiff in the future become aware of any facts or conditions relating to the subject public accommodation that may give rise to a claim that Defendants have failed to comply with any of the injunctive relief provisions set forth herein, Plaintiff shall be permitted to file a noticed motion under the current case number of this action seeking enforcement of this Consent Decree, as well as contempt of court.  The "prevailing party" in such motion proceedings, whether in full or in part, <u>may</u> be entitled to an award of reasonable attorney fees, litigation expenses and costs for such motion, i.e., the fee recovery shall be pursuant to the normal prevailing party standards that applied under the subject statutes before entry of this decree, under the subject fee shifting statutes named in the complaint and <u>Christiansburg Garment Co. v. EEOC</u>, 434 U.S. 412 (1978).  Thus, Defendants <u>may</u> be entitled to recovery of attorney's fees in such proceeding only upon proof that Plaintiff's motion is frivolous or brought in bad faith.

## AGREEMENT CONCERNING DECLARATORY RELIEF

23.   In resolution of Plaintiff's claim for declaratory relief, Defendants hereby stipulate, that by this Consent Decree, the barriers identified herein for correction, at paragraph 17, supra, constitute past and present violations of each Plaintiff's rights under the Title III of the Americans with Disabilities Act of 1990, and Civil Code Section 54 and 54.1. Defendants agree that Plaintiff's claim for statutory damages is inextricably intertwined with his claims for injunctive relief.  Defendants have agreed to conduct the barrier removals herein as a result of the settlement of this action.

## RESOLUTION OF STATUTORY DAMAGE CLAIMS

24.   Defendant agrees to pay his the amount of $16,000 in full satisfaction of Plaintiff's claims for bodily and personal injury and for statutory damages under Title II of the ADA, and Civil Code Sections 52 and 54.3.  A check for this amount shall be made payable to "TIM THIMESCH, In Trust," and delivered into Plaintiff counsel's hands within 7 days of Defendant' execution of this Full Consent Decree Judgment and Order.  If overnight mail is

Thimesch Law Offices
158 HILLTOP CRESCENT
WALNUT CREEK,
CA 94597-3452
(925) 588-0401

Full Consent Decree Order and Judgment: Case No. CV-11-0873 DMR                    — 18 —

1    used, Defendants shall supply Plaintiff's counsel with a tracking number.

2          **25.**    The parties stipulate that the foregoing amount is intended to be paid in full to

3    Plaintiffs, and understand that no part of it shall be received by Plaintiffs' counsel in

4    compensation toward each Plaintiff's separate claim for reasonable statutory attorney fees,

5    litigation expenses, and costs.

6

7    **RESOLUTION OF CLAIM FOR REASONABLE STATUTORY ATTORNEYS FEES,**

8    **LITIGATION EXPENSES AND COSTS:**

9          **26.**    Defendant agree to pay his the amount of $44,000 in full satisfaction of

10   Plaintiffs' claims for interim and final claims for reasonable statutory attorney fees, litigation

11   expenses and costs under Section 505 of the ADA [42 USC 12205]; and Civil Code Sections 52

12   and 54.3.  A check for this amount shall be made payable to "TIM THIMESCH, IN TRUST,"

13   and delivered into Plaintiff counsel's hands within 7 days of Defendant' execution of this Full

14   Consent Decree Judgment and Order. If overnight mail is used, Defendant shall supply

15   Plaintiff's counsel with a tracking number.

16

17   **FULL CONSENT DECREE JUDGMENT AND ORDER:**

18         **27.**    This Consent Decree constitutes the entire agreement between the parties on the

19   matters of Plaintiff's claims for injunctive relief, statutory and personal injury damages, and

20   reasonable statutory attorney fees, litigation expenses and costs, and no other statement,

21   promise, or agreement, either written or oral, made by any of the parties or agents of any of the

22   parties, that is not contained in this written Full Consent Decree Judgment and Order, shall be

23   enforceable regarding the matters described herein.

24

25   **CONSENT DECREE BINDING ON PARTIES AND SUCCESSORS IN INTEREST:**

26         **28.**    The parties agree and represent that they have entered into this Consent Decree

27   voluntarily, under no duress, and wholly upon their own judgment, belief, and knowledge as to

28   all matters related to this Consent Decree, after having received full advice from counsel.

Thimesch Law Offices
158 HILLTOP CRESCENT
WALNUT CREEK,
CA 94597-3452
(925) 588-0401

Full Consent Decree Order and Judgment: Case No. CV-11-0873 DMR          — 19 —

29. This Consent Decree shall be binding on Plaintiffs and Defendants and any successors in interest. During the period of this Consent Decree, the parties have a duty to so notify all such successors in interest of the existence and terms of this Consent Decree during the period of the Court's jurisdiction of this Consent Decree.

**CONSENT TO JURISDICTION OF MAGISTRATE JUDGE:**

30. In accordance with the provisions of Title 28, U.S.C. Section 636(c), each undersigned party in the above-captioned civil matter hereby voluntarily consents to have a United States Magistrate conduct any and all further proceedings in the case related to enforcement of this Consent Decree. Appeal from such enforcement orders shall be taken directly to the United States Court of Appeals for the Ninth Circuit. Pursuant to this stipulation, each undersigned party requests that this matter be assigned specifically to Magistrate Judge Nathanael Cousins.

**JOINT PREPARATION AND SEVERABILITY:**

31. This Consent Decree is deemed jointly prepared by all parties and shall not be strictly construed against any party as its drafter. If any term of this Consent Decree is determined by any court to be unenforceable, the other terms of this Consent Decree shall nonetheless remain in full force and effect.

**SIGNATORIES BIND PARTIES:**

32. Signatories on the behalf of the parties represent that they are authorized to bind the parties to this Consent Decree.

**SIGNATORIES BIND PARTIES:**

33. This Consent Decree may be executed in counterpart signatures, and such signatures may be attached in counterparts, each of which shall be deemed an original, and which together shall constitute one and the same instrument. Such counterparts may be signed

Thimesch Law Offices
158 HILLTOP CRESCENT
WALNUT CREEK,
CA 94597-3452
(925) 588-0401

1  as faxed signatures, which shall have the same force and effect as original signatures.

2

3  Dated: OCT. 12, 2011

4                                                    CRAIG YATES

5

6  Dated: Oct 13, 2011

7                                                    SAFEWAY, INC.

8                                                    By: Stephen R. _____

9

10                                                   Officer's Title: Secretary

11 Dated: _____

12                                                   DYNACO, INC.

13                                                   By: Randy T. Brooks

14

15                                                   Title: President

16 Dated: _____

17                                                   GLEN WIENKE

18

19 Dated: _____

20                                                   TAMRA WIENKE

21

22 ////

23

24

25

26

27

28

Aldcroft Law Offices
158 HILLTOP CRESCENT
WALNUT CREEK,
CA 94597-3453
(925) 788-0401

Full Consent Decree Order and Judgment; Case No. CV-11-0873 DMR                — 21 —

as faxed signatures, which shall have the same force and effect as original signatures.

Dated: _OCT. 12.2011_

_____
CRAIG YATES

Dated: _OCT 13, 2011_

_____
SAFEWAY, INC.

By: _____

Officer's Title: _____

Dated: _____

_____
DYNACO, INC.

By: _____

Title: _____

Dated: _10-18/11_

_____
GLEN WIENKE

Dated: _10/19/11_

_____
TAMRA WIENKE

////

Wienck Law Offices
132 HILLTOP CRESCENT
WALNUT CREEK,
CA 94597-3453
(925) 254-0461

Full Consent Decree Order and Judgment; Case No. CV-11-0873 DMR

— 21 —

1    **APPROVED AS TO FORM:**

2    Dated: October 12, 2011                THIMESCH LAW OFFICES
                                            TIMOTHY S. THIMESCH, ESQ.
3
                                            /s/ Authorized Signed
4                                           Attorneys for Plaintiff
                                            CRAIG YATES
5

6    Dated: October __, 2011               STEPHEN Q. ROWELL, ESQ.
                                           General Counsel
7                                          SAFEWAY, INC.

8                                          /s/ Authorized Signed
                                           Attorneys for Defendant
9                                          SAFEWAY, INC.

10
     Dated: October __, 2011              ROGER V. JAFFE, ESQ.
11                                        THE BRITT GILBERT LAW GROUP

12

13                                        /s/ Authorized Signed
                                          Attorneys for Defendant
14                                        DYNACO, INC.

15

16

17                                        **ORDER**

18
         **IT IS SO ORDERED.** _____
19
     _____
20
     _____
21
     _____
22
     _____.
23
24                                        _Susan Illston_
     Date: ___10/24/11_____             _____
25                                        HON.  SUSAN ILLSTON, JUDGE
26                                        U.S. DISTRICT COURT
27

28

Thimesch Law Offices
158 HILLTOP CRESCENT
WALNUT CREEK,
CA 94597-3452
(925) 588-0401

Full Consent Decree Order and Judgment: Case No. CV-11-0873 DMR                    — 22 —